IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JERRY W. CONWAY,                          )
                                          )
                    Plaintiff,            )
                                          )
          v.                              )          1:18CV483
                                          )
ANDREW SAUL,                              )
Commissioner of Social Security,[1]      )
                                          )
                    Defendant.            )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Jerry W. Conway ("Plaintiff") brought this action pursuant to Section

1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 1383(c)(3)), to obtain

judicial review of a final decision of the Commissioner of Social Security denying his claims

for Supplemental Security Income under Title XVI of the Act. The parties have filed cross-

motions for judgment, and the administrative record has been certified to the Court for review.

I.        PROCEDURAL HISTORY

Plaintiff protectively filed applications for Disability Insurance Benefits and

Supplemental Security Income Benefits on May 6, 2015, alleging a disability onset date of

February 7, 2003 in both applications. (Tr. at 11, 43, 94, 117.)[2] He later amended his alleged

---

[1] Andrew Saul became Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be substituted for Nancy A. Berryhill as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #7].

onset date to May 8, 2015. (Tr. at 262.) Because this date fell after Plaintiff's March 31, 2008

date last insured, the amendment effectively withdrew Plaintiff's claim for Disability Insurance

Benefits. (Tr. at 11.) Plaintiff's applications were denied initially (Tr. at 113-14, 145-56) and

upon reconsideration (Tr. at 115-44, 164-72). Thereafter, he requested an administrative

hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 174-75.) Plaintiff, along

with his attorney and an impartial vocational expert, attended the subsequent hearing on

August 28, 2017. (Tr. at 11.) The ALJ ultimately concluded that Plaintiff was not disabled

within the meaning of the Act from his amended alleged onset date through December 5,

2017, the date of the administrative decision. (Tr. at 27.) On April 6, 2018, the Appeals

Council denied Plaintiff's request for review of this decision, thereby making the ALJ's

conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-6.)

II.     LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of

social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the

scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144

(4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d

396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the

ALJ if they are supported by substantial evidence and were reached through application of the

correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal

quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993)

(quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." <u>Hancock</u>, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" <u>Id.</u> (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III.    DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since May 8, 2015, his amended alleged onset date. Plaintiff therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> Residual effects of right knee ACL surgery; left knee ACL and meniscus tear, medial ligament sprain, and tibial plateau fracture, status post surgery; rib fractures; degenerative disc disease of the lumbar spine; lumbar spondylosis; lumbar facet arthropathy; saphenous nerve neuropathy; insomnia; depressive disorder; anxiety disorder; panic disorder; and alcohol use disorder[.]

(Tr. at 14.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 15-17.) The ALJ therefore assessed

---

[the ALJ]] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

Plaintiff's RFC and determined that he could perform light work with the following additional limitations:

> [Plaintiff] must have the option to stand for 1-5 minutes after sitting for 30 minutes and sit for 1-5 minutes after standing and/or walking for 30 minutes. [Plaintiff] can frequently push/pull and operate foot controls with the left lower extremity; occasionally climb ramps or stairs; occasionally climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; and have occasional exposure to unprotected heights, hazardous machinery or hazardous moving mechanical parts. [He] is limited to jobs that can be performed while using a handheld assistive device, a cane, required at all times when walking[,] and the contralateral upper extremity could be used to lift an carry up to exertional limits. [Plaintiff's] work is limited to simple, routine and repetitive tasks but not at a production rate pace; simple work-related decisions; occasional interaction with the public; and frequent interaction with co-workers and supervisors. [He] would be off task no more than 10% of the time in an 8-hour workday, in addition to normal breaks (with normal breaks defined as a 10-15 minute morning and afternoon break and a 30 minute lunch break).

(Tr. at 17.) The ALJ found at step four of the analysis that Plaintiff had no past relevant work. (Tr. at 25.) However, the ALJ found at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, he could perform other jobs available in the national economy. (Tr. at 26-27.) Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 27.)

Plaintiff now contends that substantial evidence fails to support the ALJ's conclusion that Plaintiff can perform the standing and walking required to perform light work. In particular, Plaintiff argues that "the ALJ failed to explain how he arrived at his conclusion that [Plaintiff] can stand or walk for 30 minutes, despite evidence to the contrary." (Pl.'s Br. [Doc. #10] at 14.)

As Social Security Ruling ("SSR") 96-8p instructs, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related

6

abilities on a function-by-function basis," including the functions listed in the regulations. SSR 96-8P, 1996 WL 374184, at *1. "Only after such a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work." Monroe v. Colvin, No. 12-1098, 2016 WL 3349355, at *9 (4th Cir. June 16, 2016) (internal quotations and citations omitted). Further, the "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P, 1996 WL 374184, at *7. An ALJ must "both identify evidence that supports his conclusion and build an accurate and logical bridge from [that] evidence to his conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis omitted) (internal quotation omitted). In many cases, "'[a]n ALJ may satisfy the function-by-function analysis requirement by referencing a properly conducted analysis of state agency consultants.'" Sineath v. Colvin, 1:16CV28, 2016 WL 4224051, at *5 (M.D.N.C. Aug. 9, 2016) (quoting Herren v. Colvin, No. 1:15-CV-00002-MOC, 2015 WL 5725903, at *5 (W.D.N.C. Sept. 30, 2015) (collecting cases)). Remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). The court in Mascio concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. Id. at 637;

see Monroe v. Colvin, 826 F.3d 176, 187-88 (4th Cir. 2016) (remanding because ALJ erred in not determining claimant's RFC using function-by-function analysis; ALJ erroneously expressed claimant's RFC first and then concluded that limitations caused by claimant's impairments were consistent with that RFC).

In the present case, in determining Plaintiff's RFC, the ALJ discussed the relevant medical opinion evidence and treatment notes at length. In particular, he recounted that in July 2015, two months after the alleged onset date, Plaintiff underwent a consultative examination in which he "exhibited only mildly reduced functioning." (Tr. at 19.) The examiner, Dr. Micah Edwin, noted that that Plaintiff "was neurologically intact, and while he had some pain with motion, he had no muscle tenderness or atrophy; could sit, stand, and ambulate with a normal gait; and had a negative straight leg raise test." (Tr. at 19, 439.) Dr. Edwin further noted that Plaintiff "had no tenderness in his back and no difficulty getting on or off the examination table or a chair." (Tr. at 19, 439.) He "had a mild reduction in the range of motion of his thoracolumbar spine, but his range of motion was otherwise normal, and he exhibited 'no objective evidence' of pain to his knees or hands." (Tr. at 19, 435.) Overall, Dr. Edwin opined that Plaintiff "did not need an assistive device for ambulation; had no impairment in his ability to sit, stand, move about, [or] handle objects . . . ; mild impairment in his ability to carry; and moderate impairment in his ability to lift." (Tr. at 23, 440.)

The ALJ assigned "some weight" to the above findings, but partially discounted Dr. Edwin's opinion because it predated Plaintiff's September 2015 moped accident, which resulted in an anterior cruciate ligament (ACL) tear in Plaintiff's left knee. (Tr. at 23.) The ALJ specifically addressed Plaintiff's physical functioning before and after this accident, noting

that he underwent ACL reconstruction surgery on January 28, 2016, with gradual healing and weaning of a knee brace. (Tr. at 19-20.) The ALJ noted that

> [I]n June, [Plaintiff] reported no left knee complaints, and he related feeling stronger, with no feelings of instability or numbness or tingling, and that physical therapy has been 'working out well'. However, other notes reference [Plaintiff] having knee pain with numbness and tingling. In August of 2016, [Plaintiff] reported some knee pain, which was worse going up stairs, but that he had been doing well 'overall,' and he did not have any instability.

(Tr. at 20.) The ALJ further noted that "[i]n March of 2017, [Plaintiff] reported 'mild' diffuse pain in his knees, but this was described as 'not limiting,' and [Plaintiff] was described as able to attend to his activities of daily living." (Tr. at 20.)

The ALJ also reviewed the imaging records, including a June 2016 MRI "which showed left lumbar radiculopathy and 'mild' degenerative changes, but did not show any significant canal or neuroforaminal stenosis" (Tr. at 20, 801), and imaging in October of 2016 which "showed 'slight' retrolisthesis of L4 on L5, with 'mild' central canal stenosis, but otherwise showed only 'mild' changes without significant stenosis" (Tr. at 21, 882). The ALJ also considered Plaintiff's activities, including that Plaintiff "had worked at his father's locksmith business and had only stopped working because he lost his van and locksmithing equipment after a 2015 DUI", and that Plaintiff had recently "attempted to work out a living arrangement in exchange for acting as a handy man and mowing yards." (Tr. at 18.)

Finally, the ALJ also considered and gave "moderate weight" to the opinions of the State Agency medical consultant at the reconsideration level, Pamela Jessup, M.D., who evaluated Plaintiff's claims on January 12, 2016, several months after his accident. (See Tr. at 23, 136-40.) Dr. Jessup projected Plaintiff's RFC after his injury based, in part, on Plaintiff's successful recovery from a previous ACL tear in his other (i.e., right) knee. (Tr. at 140.) She

opined that, both prior to his moped accident and following his recovery, Plaintiff could perform medium work and could sit, stand, and/or walk for up to 6 hours in an 8-hour workday. (Tr. at 137-40.) Significantly, Dr. Jessup acknowledged Plaintiff's reports of increased pain since the initial consideration of his claims, along with new imaging showing mild lumbar spine degeneration. However, she explained that, based on the objective medical findings, Plaintiff's impairments were not as disabling as alleged. (Tr. at 140.) When discussing Dr. Jessup's opinion, the ALJ further noted that, while Plaintiff "did experience a significant moped accident in 2015, the record reflects that [Plaintiff] underwent an ACL repair in 2016, and in 2017, he was reporting no functional limitations from his knees, and that his back pain was controlled on medication." (Tr. at 23 (citing Tr. at 757, 801, 882, 901, 909, 933).) The medication in question included used of opioids and a TENS unit as well as facet block injections, all of which Plaintiff generally characterized as effective in reducing his level of chronic back pain. (See Tr. at 21, 58, 933.) He denied any medication side effects and reported that his regimen improved his quality of life and functionality level, allowing him to perform the majority of his activities of daily living. (Id.)

The ALJ then analyzed the evidence as follows:

[Plaintiff's] original allegations of physical disability were predicated on 20-year old events and not supported by physical examinations which predated his September 2015 moped accident. The record also contains evidence suggesting [that Plaintiff] worked into 2015 and only stopped because of alcohol issues. [Plaintiff] was documented with significant ACL and knee issues following his September 2015 accident, but they were addressed surgically, and he was described as not having significant functional limitations from these conditions in the recent record. Although [Plaintiff] had reported back pain for 20 years, objective imaging has largely shown only slight or mild problems. While it is questionable if [Plaintiff's] cane was prescribed by a doctor, the undersigned has considered the evidence in the light most favorable to [Plaintiff] by providing for a cane in [Plaintiff's] residual functional capacity [assessment].

10

(Tr. at 25.)

Although Plaintiff reported to his providers that he continued to experience chronic back pain, hence his referral to a pain management clinic, no evidence, other than Plaintiff's own testimony, connects his pain level to the degree of functional loss he alleges. In this regard, Plaintiff testified that he could sit "[a]nywhere from 15 to 20 minutes," depending on his pain level (Tr. at 57), and could "stand maybe ten, maybe 15 minutes at the most," at which point he had to sit back down (Tr. at 58). In short, Plaintiff testified that his back pain required him to alternate between sitting and standing. However, the State agency medical consultants, as mentioned above, found Plaintiff capable of medium work and able to stand, walk, and sit for about 6 hours each in the course of an 8-hour day. (Tr. at 23, 99, 139.) Dr. Edwin also opined that Plaintiff "had no impairment in his ability to sit, stand, [or] move about." (Tr. at 23, 440.)[5] Moreover, the ALJ found Plaintiff's pain allegations were "not entirely consistent with the medical evidence and other evidence of record," and Plaintiff does not contest this finding. (Tr. at 19.) In particular, the ALJ repeatedly emphasized that, despite his reported pain levels, Plaintiff "exhibited only mildly reduced functioning" upon examination. (Tr. at 19-21.) In addition, as explained in the administrative decision, "objective imaging [of Plaintiff's spine] has largely shown only slight or mild problems" and does not support a greater degree of functional loss. (Tr. at 25.)

---

[5] The only evidence in favor of greater restrictions comes from a letter authored by Caroline Roberts, M.D., in October 2015, a month after Plaintiff's moped accident and before his surgery. In that letter, which contained no functional limitations, Dr. Roberts opined that Plaintiff's chronic low back pain rendered him permanently disabled. Because, among other reasons, this opinion was on an issue reserved to the Commissioner, the ALJ gave it little weight, and Plaintiff does not appear to challenge that determination. (Tr. at 23, 871.)

Based on this analysis, the ALJ did not accept that Plaintiff was as limited as he alleged. However, the ALJ nevertheless "considered the evidence in the light most favorable" to Plaintiff, and included in the RFC a requirement that he use a cane, and also similarly included a "sit/stand" option limiting Plaintiff to standing, walking, and sitting no more than 30 minutes at a time. (Tr. at 25.) Thus, as set out above, the ALJ considered the evidence at length, set out the evidence and the basis for the determination, included extensive limitations in the RFC to address Plaintiff's impairments, and explained that determination in a manner sufficient to allow for judicial review. That determination is supported by substantial evidence in the record, set out by the ALJ in the decision, and the Court will not re-weigh the evidence or substitute its judgment for that of the ALJ.

Finally, the Court notes that Plaintiff also contends that his impairments are inconsistent with the requirements of light work, specifically that "[l]ight work requires the ability to stand and/or walk up to six hours in an 8-hour workday, which [Plaintiff] cannot do, so he is limited, at best, to sedentary work." (Pl. Br. at 22.) However, the ALJ found that Plaintiff had additional limitations that reduced his ability to perform the full range of light work, including, as discussed above, the limitation for a sit/stand option requiring that Plaintiff have the option to stand for 1-5 minutes after sitting for 30 minutes and sit for 1-5 minutes after standing and/or walking for 30 minutes. In addition, the ALJ found that Plaintiff was limited to jobs that could be performed while using a case, required at all times when walking. It may be that Plaintiff is contending that these limitations are in conflict with the general limitation to light work and the provisions of the Dictionary of Occupational Titles. See Pearson v. Colvin, 810 F.3d 204, 209-10 (4th Cir. 2015) (holding that if an expert's testimony

apparently conflicts with the DOT, the expert's testimony can only provide substantial evidence to support the ALJ's decision if the ALJ received an explanation from the expert explaining the conflict and determined both (1) that the explanation was reasonable and (2) that it provided a basis for relying on the expert's testimony rather than the DOT). However, to the extent that Plaintiff "essentially presses the Court to find a *per se* apparent conflict between the VE and the DOT in cases involving a claimant limited to light work with a sit/stand option . . . federal district courts in North Carolina, including members of this Court, have not found an apparent conflict to exist in such circumstances." See Baxley v. Berryhill, No. 1:17CV1048, 2018 WL 5817377 (M.D.N.C. Nov. 6, 2018) (collecting cases). Moreover, in the present case, as in Baxley, even if such a conflict did exist, the VE and the ALJ specifically considered and addressed the issue. Specifically, the ALJ confirmed with the VE at the outset that with respect to opinions or answers that conflict with or are not covered by the DOT, including "a sit/stand option" and "use of a handheld assistive device", the answer or opinion of the VE would be based on the VE's "education, training and professional experience." (Tr. at 84.) In addition, when the ALJ posed the hypothetical to the VE with the option to stand for 1-5 minutes after sitting for 30 minutes or sit for 1-5 minutes after standing and/or walking for 30 minutes, the VE testified that "latitude posture is not addressed by the Dictionary of Occupational Titles, but based on my training, education and experience the previously cited example, the garment sorter, laundry classifier and bakery worker would allow for this latitude of posture." (Tr. at 86.) Similarly, with respect to use of the cane, the VE testified that "[t]hese are all jobs that are performed in a stationary position. There will be periods of standing activity. Typically the essential functions do not require

13

walking while performing those tasks. The use of an assistive device for walking would not impair the ability to perform these jobs." (Tr. at 87.) The ALJ acknowledged and accepted these explanations in the decision. (Tr. at 26.) Thus, to the extent Plaintiff is attempting to raise a conflict or inconsistency as part of this claim, that issue was sufficiently addressed by the VE and the ALJ, and would not provide a basis for remand here.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #9] be DENIED, that Defendant's Motion for Summary Judgment [Doc. #12] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 29th day of August, 2019.

_____/s/ Joi Elizabeth Peake_____
United States Magistrate Judge